Gertrude M. Bacon, J.
This is a proceeding brought under article 5 of the Family Court Act by the petitioner, the mother of the child, to declare the respondent, the father of the child, the petitioner mother alleging the child was born out of wedlock.
On examining the photo static copy of the birth certificate, the petitioner’s husband’s name appears, and on questioning the petitioner it is found that the petitioner is still married to the man whose name appears on the birth certificate, and was married at the time of the birth of said infant.
The purpose and intent of article 5 of the Family Court Act is to protect and care for the innocent child of an illicit relation.
It would follow without question that a child born during a marriage should be afforded the same protection as to his status of legitimacy, and before a court upsets this, and in substance illegitimates a legitimate child, a preponderance of evidence must *676 be submitted, so that the court is fully satisfied when in effect this determination is to illegitimatize the legitimate child.
'Section 511 of the Family Court Act gives the Family Court exclusive original jurisdiction in determining paternity.
Section 512 of the Family Court Act defines children born out of wedlock, and nowhere is the word “ married woman ” mentioned. Since section 512 does not make any mention of married women, judicial conflict and uncertainty exist in the courts concerning the interpretation. However, the majority of decisions do hold that married women may commence a paternity proceeding under the Family Court Act.
The presumption of legitimacy is still considered one of the strongest presumptions of law, although it is not conclusive and can be rebutted (Matter of Findlay, 253 N. Y. 1).
The leading cases in the field hold that it is a question of fact in each case as to whether the presumption of legitimacy has been rebutted (Anonymous v. Anonymous, 43 Misc 2d 1050; Fitzsimmons v. De Cicco, 44 Misc 2d 307; Matter of Lee v. Stix, 55 Misc 2d 940; People ex rel. Bygland v. Gouse, 134 N. Y. S. 2d 328; People ex rel. Louvar v. Convent of Sisters of Mercy in Brooklyn, 109 N. Y. S. 2d 846).
In the Supreme Court, the Surrogate’s Court, and the Civil Court, when it appears that a child, known or unknown, may have an interest in the proceeding, a guardian is appointed to represent these interests.
Nowhere in article 5 of the Family Court Act is such protection afforded to the child.
In article 5 of the Family Court Act, when the petitioning mother is a minor, a guardian is appointed in her behalf.
Therefore it appears inconceivable that the infant in a paternity proceeding has been neglected as has the husband of the mother.
The right to be heard within the due process clause of the Constitution has little reality unless one is informed of the matter and can choose for himself whether to appear or default, acquiesce or contest, and the notice must be of such nature as reasonably to convey this required information.
A fundamental requirement of due process of law in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and the notice must be of such nature that it reasonably conveys the required information and must afford a reasonable time for those interested to make their *677 appearance (Matter of Gazan v. Corbett, 100 N. Y. S. 2d 429, revd. 278 App. Div. 953, affd. 304 N. Y. 920).
Without corrective legislation, many legitimate children will he judicially determined illegitimate merely by the sworn statements of the petitioner mother and her paramour.
It is most important that the statute protect the child and mother’s husband in all paternity proceedings involving a married woman, by requiring appointment of guardians ad litem for children in all paternity proceedings, and requiring notice sent to the presumptive fathers in paternity proceedings where the petitioner is a married woman.
Accordingly, this court adjourns this matter to August 13, 1969 so that notice of this proceeding may be sent to the presumptive father, the husband of the petitioner, along with a copy of the petition.
The presiding Judge on the adjourned date may make a final determination of paternity based on the amended petition and a hearing de novo.