536 S.W.2d 944 (1976)
J. M. L., Plaintiff-Appellant,
v.
C. L., Defendant-Respondent.
No. 37328.
Missouri Court of Appeals, St. Louis District, Division Two.
May 4, 1976.
*945 Charles P. Todt, Susan Hammer, Clayton, for plaintiff-appellant.
Ellsworth Cundiff, Jr., St. Charles, for defendant-respondent.
DOWD, Judge.
J. A. L. was born on January 23, 1973. His mother, appellant here, was then and has been at all times since married to the same man. The name of her husband does not appear in the record, but he is the legal and is presumed to be the natural father of the child. The strongest presumption known to the law is that a child born in wedlock is the child of the marriage. Simpson v. Blackburn, 414 S.W.2d 795, 797[3] (Mo.App.1967); Bernheimer v. First Nat'l Bank of Kansas City, 359 Mo. 1119, 1133, 225 S.W.2d 745, 751[10] (banc 1949). The presumption may be rebutted. In re K___ W___ H___, 477 S.W.2d 433, 436[1] (Mo. App.1972).
No exact date appears in the record, but some time before June 18, 1975, C. L., respondent, brought an action against J. M. L. in the form of a petition to establish his paternity of J. A. L. Appellant's answer of June 18, 1975, denied that C. L. was the natural father of J. A. L.
Approximately three weeks later a stipulation was signed by appellant and respondent that J. A. L. was the natural son of C. *946 L. On that day, July 7, 1975, the court entered an order establishing C. L. as the natural father. There was no testimony adduced before or after the entry of this order. The order further stipulated that C. L. was to have temporary custody of the child on alternate weekends and was to pay $20.00 per week to J. M. L. for child support.
On August 4, 1975, appellant filed a motion to set aside the order of July 7, 1975 and requested that the case be heard on the merits. The basis for that motion was that appellant signed the stipulation under great emotional stress, that the order was entered without a hearing, that both appellant's husband as presumptive father of J. A. L. and J. A. L. himself, should have been made parties to the action, and that since the date of the order appellant, her husband and child have undergone blood tests showing that her husband could be the father of J. A. L. The parties are in dispute as to how this motion was disposed of, and the court record is unclear. It is apparent, however, from the subsequent legal actions of appellant that the motion was not granted.
Appellant filed on August 29, 1975, a motion to stay execution of the judgment of paternity and temporary custody, until appeal could be heard. This motion stated that appellant, her child, and her husband were all under stress because of respondent's exercise of his visitation and custody rights. On September 12, 1975, there was a hearing on this motion, and appellant then filed a memorandum advising the court of the error of non-joinder of parties and that the presumption of legitimacy must be rebutted. At the hearing the court granted respondent's motion to dismiss appellant's motion to stay, on the ground of lack of jurisdiction.
Six days later appellant filed for a writ of prohibition against the circuit judge that he refrain from dismissing appellant's motion to stay. The petition for said writ was denied on September 29, 1975.
In her appeal to this court, appellant cites four points of error: 1) that necessary parties were not joined; 2) no notice was given to the presumptive father; 3) the legal presumption of legitimacy was not rebutted; and 4) no guardian ad litem was appointed to protect the child's interest. We agree with the appellant's contentions and accordingly reverse the trial court's judgment.
Both the child and his presumptive father should have been joined as parties. A recent Missouri case discussed whether a child is "bound by a judgment that he is the biological son of a putative father, rather than the biological son of his presumptive father, in any type of action to which he is not a party." That issue, being sui generis in Missouri, was decided by examining cases from other jurisdictions. The court held that the child was a necessary party. O___F___L___ v. M___R___R___, 518 S.W.2d 113, 125[11] (Mo.App.1974).
That court also found the child's mother to be a necessary party. O___F___L___ v. M___R___R___, supra, at 127[12]. It reached this result by examining Rule 52.04, "Joinder of Persons Needed for Just Adjudication." Using the same reasoning, we hold the presumptive father to be a necessary party to this action. Without him, "complete relief" cannot be accorded to all the parties, Rule 52.04(a)(1). Also, as presumptive father he "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest." Rule 52.04(a)(2). It can hardly be disputed that a presumptive father has an "interest relating to the subject of the action" when the action concerns a young child who was born to his wife during their marriage, and who, according to the uncontradicted statements at oral argument, carries his name and has been supported by him.
The "interest" he has in this child would also require that he be given notice of the paternity action or any action attempting to affect any of his rights as *947 presumptive and legal father of J. A. L. This notice is required by the due process clause of the state and federal constitutions. In re Barger, 365 S.W.2d 89, 96[6] (Mo.App.1963); Daugherty v. Nelson, 241 Mo.App. 121, 135, 234 S.W.2d 353, 361-62[14] (1950).
Although the very question here is whether the legal father is in fact the natural father, this does not mean he is to be accorded no rights, such as right to notice, until he proves himself to be the natural father. The burden of proving illegitimacy is on the party asserting it. S___ v. S___, 520 S.W.2d 652, 654[1] (Mo.App.1975); F___ v. F___, 333 S.W.2d 320, 327[10] (Mo.App. 1960). The burden is an onerous one, for proof must be "clear and convincing." F___ v. F___, supra at 327, and "leaving no room for reasonable doubt." Jackson v. Phalen, 237 Mo. 142, 152, 140 S.W. 879, 882[6] (1911). Otherwise the strong presumption of legitimacy remains unrebutted. The trial court erred in finding for respondent when no evidence was adduced to rebut the presumption of legitimacy.
Likewise under the facts of this case, we believe that a guardian ad litem should have been appointed to protect the interests of the child. Courts have held that failure to appoint a guardian ad litem for minors in personal injury litigation would be grounds to have an unfavorable judgment set aside. McDaniel v. Lovelace, 439 S.W.2d 906, 911[9] (Mo.1969). And here the child has much more to lose than money. At stake is his status as a legitimate child, as well as his right to be supported by and inherit from his presumptive father. And since we hold that the child was a necessary party, a guardian ad litem should have been appointed to represent him, pursuant to §§ 475.010(2) and 475.090, RSMo 1969. A guardian ad litem is necessary since the litigation purports to make a "binding effect on the child's status," i. e., his legitimacy. O___F___L___ v. M___R___R___, supra, at 122. The trial judge should have been put on notice that the child's interests were not being protected by the mother, as evidenced by her actions. She first denied respondent's paternity in her answer to his petition, then she admitted his paternity in a signed stipulation, and now she again denies his allegation of paternity and then requests that the issue of paternity be litigated on the merits. Thus a guardian ad litem, and in this case not the child's mother, should have been appointed by the court.
For the reasons stated herein, the judgment is reversed.
CLEMENS, P. J., and STEWART, J., concur.