■ In the Matter of SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent, v HILVAN RR, Appellant.—Appeal from an order of the Family Court of Schenectady County, entered November 9, 1972, which adjudged appellant to be the father of petitioner's child and ordered appellant to pay $15 per week in support payments to the child. Ramone QQ was born December 12, 1967. His mother, Kay QQ, was married at the time, and remained married up until her death subsequent to the trial of this action. She and her husband had been separated, however, since December 31, 1965. The record reveals that she and her estranged husband met infrequently after their separation, once in April, 1966, after Mrs. QQ broke her leg, when he cared for their children, and twice in 1967. Mr. QQ moved from Schenectady to New Jersey in July, 1966 and then to Pennsylvania. He returned to visit the children on Easter Sunday, March 28, 1967, accompanied by two men and a woman. He stayed briefly to give the children Easter baskets, and then gave Mrs. QQ a ride to her mother's house. He also visited her in late August or September of 1967. Mrs. QQ testified that she met the appellant through her husband in 1961 and began an extramarital affair in 1963. The affair lasted until 1968, although sexual relations tapered off to an average of once a month from 1965 through the end. Mrs. QQ testified to relations with appellant five or six times during

the first few months of 1967. She had her last menstrual period in February, 1967. On the other hand, the record indicates that Mrs. QQ admitted lying on at least two prior occasions, once telling her Department of Social Services caseworker that Mr. QQ was the father of the child and giving the same information to the clinic handling the childbirth. Mrs. QQ gave two explanations: first that she was embarrassed to admit to the affair with appellant since she was a married woman and, second, that she was afraid to tell the truth for fear that she would lose her other children if she admitted to an extramarital affair in open court. Her expression of these fears was corroborated by a caseworker with Social Services. Other witnesses corroborated what appeared to be a relationship between Mrs. QQ and the appellant. In this action, brought by the Schenectady County Department of Social Services four and one-half years after childbirth to determine paternity and recover support payments, the Schenectady County Family Court found appellant to be the father of Ramone. The court found Mrs. QQ to have been a credible witness, found that she had had an extended affair with the appellant, and held that even though Mrs. QQ was still married, she established nonaccess by her husband sufficient to overcome the strong presumption of the child's legitimacy. Where a child born to a woman who is married at the time of conception and birth is claimed to have been fathered by another man, the petitioner must clearly establish nonaccess by the husband and must overcome the presumption of legitimacy, one of the strongest presumptions known to law. As stated by Chief Judge Cardozo in *Matter of Findlay* (253 NY 1, 8): "countervailing evidence may shatter the presumption though the possibility of access is not susceptible of exclusion to the point of utter demonstration. * * * If husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer [citations omitted]. It may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together. Whether such a basis exists in any given instance is to be determined, however, in the light of experience and reason". Thus, petitioner faces a substantial burden (see *Matter of Gray v Rose,* 32 AD2d 994). Since the testimony concerning sexual relations between the appellant and the mother is clear, consistent and uncontradicted, the only point of contention is Mrs. QQ's credibility. She admitted having lied about the child's father, a key issue in the case, but gave an understandable explanation which the trier of facts was entitled to accept. Credibility is, of course, a matter usually left to the trier of fact who has an opportunity to observe the witness and is in a far better position than one who has only the transcript before him to assess the many other factors which go into a determination of credibility *(Matter of Iris GG v Thomas HH,* 37 AD2d 1006). The Family Court in the instant case did take the matter of Mrs. QQ's credibility into account, and decided to believe her on the basis of her demeanor and forthright testimony. That determination should not be disturbed. On the issue of nonaccess, petitioner bears, as we have noted, a heavy burden of proof. The weight of this burden is demonstrated by such cases as *Matter of Irma N. v Carlos A. F.* (46 AD2d 893), *Matter of Gray v Rose (supra),* and *Matter of Black v Brown* (27 AD2d 683). In these cases, the affirmative proof as to continuing relations between estranged marital partners ranged from nonexistent to inconclusive at best. Nevertheless, in each of them the husband and wife were shown to have had sufficient opportunity to meet so that the requirement of negating access was not sustained and a finding of paternity against the wife's paramour was rejected. The case at bar, however, presents an additional

element. Mr. QQ resided without this State for at least eight months prior to conception. The only evidence of possible access in the record is the one encounter in March of 1967. Mr. QQ briefly visited his children and brought them baskets on this Easter Sunday. He came accompanied by three other adults, during daylight hours. The Family Court stated its belief that neither the law nor common sense could "dictate that a visit during the day on a holiday such as Easter Sunday to see children, admittedly of the marriage, for a brief period of time, constitutes a possibility of access under the law". The record and the cases support this conclusion, and Mr. QQ's removal from his wife by a notable "distance in time and space" *(Matter of Gray v Rose, supra,* p 995) is, in our view, sufficient to support the finding of nonaccess. (See *Matter of Iris GG v Thomas HH, supra.)* The presumption of legitimacy, while strong, is rebuttable, and in assessing the weight of proffered evidence, courts must be mindful of the fact that evidence other than of a self-interested testimonial nature will not likely be available with any frequency. While the barrier against disproving legitimacy should be protected against wanton assault, it is not impenetrable. In this case, we conclude that the Family Court was warranted in concluding, on the record as a whole, that petitioner established appellant to be the father of the child. We have examined the remainder of appellant's contentions and find them to be without merit. Order affirmed, with costs. Greenblott, J. P., Sweeney, Main, Larkin and Herlihy, JJ., concur.