OPINION OF THE COURT
Edward J. McLaughlin, J.
Article 5 of the Family Court Act gives jurisdiction to the Family Court to determine paternity for purposes of support only. In a paternity proceeding a legal fiction is established so that someone other than the public will be responsible for paying to support a child born out of wedlock. The Family Court has no jurisdiction to determine status, with the exception that the Family Court has jurisdiction over adoption proceedings. (Family Ct Act, § 641.) Thus, where, as here, a putative father seeks to establish paternity of a child who is being adequately supported by its mother’s former husband, *602 the would-be putative father’s cause of action must fail. There is no need here to determine paternity for support purposes and the court lacks jurisdiction to determine this child’s status.
FACTS
The case now before the court is what has become known as a "reverse paternity proceeding.” The alleged putative father filed a petition with the court! on July 17, 1979, asking that cause be shown as to why a determination of paternity should not be entered regarding the child, T. D., who was born on June 21, 1975. Respondent, since divorced, was a married woman who was living with her husband at the time of T. D.’s birth. The husband’s name is pn the child’s birth certificate, and although now divorced frbm T. D.’s mother, he provides $350 a month in child support to T. D. and her sibling.
Each of the parties has a completely different perception of the chronical of events surrounding the conception of the child, T. D. The story of each party is corroborated by the party’s mother. Petitioner’s story is further corroborated by his wife; respondent’s by her former husband. Thus, every piece of evidence before the court is in conflict as regards the nature of the sexual relationship between the principal parties. Petitioner claims that he and respondent entered into a sexual relationship in September of 1974 when respondent was visiting her mother in Solvay, New York. Respondent claims that she had no sexual relationship with petitioner until she returned to Solvay after T. D.’s birth.
Respondent testified that she had sexual relations only with her husband in 1974. Respondent’s husband testified that he had access to her during the time critical for conception to occur. Both petitioner and respondent’s husband testified that no means of contraception was used by the parties during the time critical to conception.
Had it not been for the events that subsequently occurred, the court would find this to be a fairly routine paternity case. However, the events that occurred after T. D.’s birth make the case more difficult.
Respondent and her husband had festering marital problems. According to respondent, her husband, after agreeing to a divorce, refused to agree to a divorce. She wanted a divorce *603 from him. This desire, respondent testified, led her to the formulation of a "plot”.
In the fall of 1975 respondent returned to central New York from California. According to petitioner she told him that he was the father of T. D. According to respondent, petitioner entered into a "giant hoax” with her so that she could get a divorce. Whatever the truth, cards to "Daddy” signed "T. D.” were sent to petitioner by respondent, saved by petitioner, and received into evidence in this proceeding.
During the divorce discussions respondent’s former husband testified that respondent told him that he was not the father of T. D. He so alleged in papers filed by him in the Supreme Court divorce action. Respondent herein in the divorce action, however, was awarded a divorce, custody of the children was awarded to her, and respondent’s former husband was ordered to pay $350 per month for the support of respondent’s two children. This he has done from the time of the divorce to the present.
On the witness stand at this paternity trial the former husband testified that T. D. is his child. As well as supporting T. D., he visits with the child regularly. He traveled from California, where he is stationed in the navy, to take part in this trial.
LAW
I. THE DERIVATION OF MODERN PATERNITY PROCEEDINGS
At common law the father of a bastard was not liable for the support of either the child or of its mother. Prior to England’s Poor Law Act of 1576, the onus of providing for illegitimate children fell exclusively upon the charity of the community through the parish. The Poor Law Act and subsequent support statutes were directed towards indemnifying the public by shifting the burden for the support of illegitimate children to their parents. (1 Schatkin, Disputed Paternity Proceedings [4th rev ed], § 1.09.) The determination of liability for the support of children born out of wedlock has continued to be exclusively a statutorily based proceeding. (People ex rel. Lawton v Snell, 216 NY 527.)
Paternity proceedings in New York were historically conceived of as criminal actions. (See Rheel v Hicks, 25 NY 289.) Later, proceedings to establish paternity and to obtain support for children born out of wedlock were conducted in both the *604 Children’s Court and the Couijt of Special Sessions (a criminal court) in New York City.[1] Upon the abolition of these courts in 1962 exclusive, original jurisdiction over paternity proceedings was granted to the Family Court. (Family Ct Act, § 115; Matter of Harris v Doley, 22 AD2d 769.) Paternity proceedings ceased entirely to have any! criminal overtones with the granting of exclusive jurisdiction to the Family Court. (Report of Joint Legis Comm on Ct Reorganization No. 2—Family Ct Act, McKinney’s Session Laws of NY, 1962, p 3441; cf. Matter of Miller v Gordon, 58 AD2d 1027.)
The legislative history of article 5 of the Family Court Act reveals that the "principal purpose of the proceeding is to resolve problems of support.” (Report of Joint Legis Comm on Ct Reorganization No. 2—Family Ct Act, McKinney’s Session Laws of NY, 1962, p 3446; see Matter of Kehn v Mainella, 40 Misc 2d 55.) While the welfare of the child is at issue in a paternity proceeding, it is the financial welfare of the child that is protected. (Cf. Schaschlo v Taishoff, 2 NY2d 408, 411.)
A. NECESSARY PARTIES
It has long been the law that neither the child nor the husband of the mother is a necessary party to a paternity proceeding. (Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, 267; but see Matter of Commissioner of Social Servs. of City of N. Y. v Lazaro F., 99 Misc 2d 408.) The Court of Appeals in Koehler (supra, p 267) stated the effect of the fact that neither the child nor the mother’s husband are necessary parties to a paternity proceeding: "The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the *605 mother’s husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties.”
B. NOTICE
Not only are the child and the mother’s husband not necessary parties to an article 5 proceeding, there is no provision in article 5 of the Family Court Act that entitles the child or the child’s mother’s husband to notice of the proceeding. Since custody of a child may be awarded to a "father” who has obtained an order of filiation (Family Ct Act, § 549), the exclusion of the mother’s husband in particular is worthy of note. (Cf. Stanley v Illinois, 405 US 645; see Matter of Boatright v Otero, 91 Misc 2d 653.)
This lack of required notice to all interested persons in a paternity proceeding can produce some bizarre results. While in some countries contribution towards the support of a child born out of wedlock is expected from all the men who had sexual relations with the mother at a time when conception was possible (Schatkin, Disputed Paternity Proceedings [4th ed], pp 87-88, cited in Matter of Dorn "HH” v Lawrence "II”, 31 NY2d 154, 157), such a contribution scheme is not anticipated under New York law. Since there is no requirement of notice, however, multifathered children are not unknown. For instance, both the child’s mother and the Commissioner of Social Services can bring paternity actions against different men, both men can admit, both men can be found to be "fathers”, and two orders of filiation can be entered in the same county. (See, e.g., Onondaga County Family Ct Docket Nos. P-933-78, P-300-79.) Or, a mother may file a paternity action in one county to which a "father” admits and an order of filiation may be made. She can then move to another county where the same process can recur. (Matter of Law Guardian v H. & F., Onondaga County Family Ct Docket No. P-385-76.) Such fiction may be tolerable if the purpose of a paternity proceeding is to keep the child born out of wedlock off the dole. Surely, status cannot be determined in a proceeding in which it is possible for such fictitious fatherhood to be found.
II. FILIATION AND LEGITIMACY DISTINGUISHED
When a child is legitimated that child is accorded the status *606 that the child would have had if it had been born to persons who were lawfully married to I one another.[2] Filiation, on the other hand, does not impart legitimacy, although it may be a step to that end.[3]
In New York an order of filiation is obtained in a proceeding pursuant to article 5 of the Family Court Act. (Family Ct Act, § 542.) Legitimation in New York has traditionally been obtained in other ways. For instance, a child may be legitimated by the marriage of its parents (Domestic Relations Law, §24), or by adoption. (Domestic Relations Law, art 7.) Then too, a child may be legitimated by bringing an action for a declaratory judgment in Supreme Court where all persons interested or likely to be affectjed by the determination would have to be joined or impleaded as parties. (Matter of Salvatore S. v Anthony S., 58 AD2d 867; Morecroft v Taylor, 225 App Div 562; cf. Moy Mee Soo v Leong Yook Yick, 21 AD2d 45.)
Legitimation gives full legal status to a child;[4] filiation does not. (See Matter of J. Children, 50 AD2d 890; Matter of Alvin B. v Denise C., 85 Misc 2d 413; contra Matter of John J. S. v Theresa L., 99 Misc 2d 578.)
A. ORDERS OF FILIATION
Once an order of filiation and an order of support are made, the order of support is enforceable as a claim against the parent’s estate. (Family Ct Act, § 513.) Thus, the child born out of wedlock has a claim agáinst his or her parent’s estate, unlike the legitimate child of a testator who has failed to include the child as a beneficiary of his will. (See EPTL 1-2.18, *607 subd [a]; Matter of Eckart, 39 NY2d 493; Matter of Dammann, 12 NY2d 500; Matter of Cairo, 35 AD2d 76.)
Orders of filiation may be made in any proceeding in Family Court, no matter its statutory basis, if it appears to the court that the child who is the subject of the proceeding is born out of wedlock and "there is an allegation or statement in a petition that a person is the father of a child”. (Family Ct Act, § 564, subd [a].) An order of support may then be made pursuant to article 4 of the Family Court Act. (Family Ct Act, § 564, subd [d].) Thus, for instance, support may be sought by the Commissioner of Social Services from the "father” of a child born out of wedlock who is found to be abused, neglected, a person in need of supervision or a juvenile delinquent, thus shifting the liability of supporting the child from the State to the person adjudicated the "father” for purposes of support. (Social Services Law, § 398, subd 6, pars [d], [e].)
As a condition of eligibility for public assistance, an applicant for aid to dependent children is required to co-operate with the Commissioner of Social Services in establishing the paternity of a child born out of wedlock. (See Family Ct Act, § 571; 45 CFR 232.12 [a] [2].) Failure to co-operate results in the denial of assistance. (45 CFR 232.12 [d].) An order of filiation obtained in such a proceeding merely shifts the burden of support from the State. It does not determine status. (Matter of Bertrand, 100 Misc 2d 439, 443.)
B. COMPROMISE — NO FILIATION
When sufficient support is provided for a child born out of wedlock, no order of filiation is made. (Family Ct Act, § 516.) That support, and not status, is the major reason for court approval of such compromise agreements is illustrated by the requirements of the statute. The court must determine that adequate provision has been made for support and that the support agreement is fully secured before the agreement will be approved. (Family Ct Act, § 516, subd [a].) Also, public welfare officials are entitled to notice and an opportunity to be heard before the compromise agreement is approved. (Family Ct Act, § 516, subd [b].) Thus, if adequate support of a child is assured, no order of filiation assigning responsibility for the support of the child need be made.
C. FILIATION BEFORE BIRTH
The provisions of article 5 that allow an order of filiation to be entered before the birth of the child (Family Ct Act, §§ 517, *608 542), and which allow the court to order a putative father to pay "funeral expenses if the child has died” (Family Ct Act, § 545, subd [a]), further illustráte that an order of filiation is merely a mechanism through which to assign the duty for support. An order of filiation entered for a child not yet born cannot establish status, for not only could the child be born dead, it is conceivable that the fetus could be aborted before it was viable and no child ever come into being, although an order of filiation had been entered. (See Roe v Wade, 410 US 113.)
III. SUPPORT OF THE CHILD OF A MARRIED WOMAN
The proposition that a paternity proceeding is basically a support proceeding for a child is strengthened by the fact that it has long been recognized that a married woman may bring an action for the support of a child born out of wedlock, even if she is married at the time that the child is conceived and born. (Matter of Mannain v Lay, 33 AD2d 1024, affd 27 NY2d 690; see Matter of Morris v "White”, 29 AD2d 905; Matter of Lee v Stix, 55 Misc 2d 940; Matter of Fitzsimmons v De Cicco, 44 Misc 2d 307; Matter of "Anonymous” v "Anonymous”, 43 Misc 2d 1050.) A child born but of wedlock is defined as a "child who is begotten and born out of lawful matrimony.” (Family Ct Act, § 512, subd [a].)
Petitioners in paternity proceedings have traditionally been the mothers of children born out of wedlock or the Commissioner of Social Services.[5] Calse law has evolved that the petitioner must establish non&ccess by the husband of the child’s mother during the period of conception. (Matter of Hanley v Wilcox, 57 AD2d 697; see Cicero v Cicero, 58 AD2d 573; Matter of Schenectady County Dept. of Social Servs. v Hilvan RR, 57 AD2d 688; Matter of Irma N. v Carlos A. F., 46 AD2d 893; Matter of Commissioner of Welfare of City of N. Y. *609 v Leroy C., 45 AD2d 963.) Nonaccess by the husband must be established by clear and convincing evidence.[6] (See, e.g., Matter of Irma N. v Carlos A. F., supra.) Indeed, "[i]f the mother is married both she and her husband may testify to nonaccess” (Family Ct Act, § 531; but see CPLR 4502). Thus a mother may seek support for a child born out of wedlock from the person who owes that child support. (Family Ct Act, § 513.)
IV. THE PRESUMPTION OF LEGITIMACY
In the leading New York case on the presumption of legitimacy, Matter of Findlay (253 NY 1), the question before the court was one legitimacy — not filiation. (See pp 605-608, supra.) A question of status was involved.
Article 5 of the Family Court Act is silent as to the presumption of legitimacy. This silence is consistent with the interpretation that paternity proceedings are support proceedings and not proceedings to determine status. (See Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, supra.) As case law has evolved, however, the notion has taken hold that the presumption of legitimacy must be overcome by clear, convincing and entirely satisfactory evidence. (See, e.g., Matter of Backus v Backus, 72 AD2d 893; Matter of Schenectady County Dept. of Social Serv. v Hilvan RR, 57 AD2d 688, supra; Matter of Irma N. v Carlos A. F., 46 AD2d 893, supra; Commissioner of Welfare of City of N. Y. v Leroy C., 45 AD2d 963, supra; Matter of Gray v Rose, 32 AD2d 994.) This body of case law tallies with the interpretation of an article 5 proceeding as a support proceeding and not as a proceeding to establish status. The husband of a married woman is responsible for the support of her children. (Family *610 Ct Act, § 413.) When the mother’s husband is unavailable or when he refuses to support a child conceived in a meretricious relationship, the woman has the right to seek to enforce the obligation of support ascribed to the "father” of the child. (Family Ct Act, § 513.) What the petitioner mother must rebut is that her husband has responsibility to support the child. Thus the primary purpose of article 5 is achieved — to procure support for children born out of wedlock so that the child need not "be supported by the county, city or town chargeable therewith under the provisions of the social welfare law.” (Family Ct Act, § 515.) Here where the child is already being supported by the wife’s former husband, there is no need for the petitioner putative father to rebut the presumption of legitimacy, since status is not at issue, but, rather, the question is one of support. Unless a putative father can establish a prima facie case that the child is in need of support and that he is able to support the child, there is no reason to proceed. The intention of the statute is to keep the child from becoming a public charge.
Since the child T. D. is being adequately supported, the court need not make a finding as to whether or not the evidence would be sufficient for this court to make a finding of paternity. Accordingly, the petition is dismissed.

. Until 1922, the earlier Children’s Courts were still parts of the criminal courts. With the passage of the Upstate Act in 1922, Children’s Courts were established in the counties outside New York City. These Children’s Courts continued until 1962 when they were superseded by the creation of the Family Court. In New York City, the Children’s Courts continued under the auspices of the criminal courts until 1933 when the City Children’s Court was merged with the former Domestic Relations Court of New York City. That court was comprised of a Children’s Court Division and a Family Court Division. Unlike the Cliildren’s Courts outside New York City, however, the Domestic Relations Court did not exercise jurisdiction over paternity actions. These were still brought before the Courts of Special Sessions, a criminal court. Article 5 of the Family Court Act superseded section 6 of the Children’s Court Act, the former subdivision 3 of section 122 of the Domestic Relations Law, and article 5 (§ 60 et seq.) of the New York City ¡Criminal Courts Act.

. Legitimate is defined as "To make la'yful; to confer legitimacy; to place a child born before marriage on the footing of those born in lawful wedlock.” (Black’s Law Dictionary [4th ed], p 1046.)

. Filiation is defined as "The relation of parent and child, but does not import legitimacy, although often a step to that end.” (Black’s Law Dictionary [4th ed], p 756.)

. One area where this distinction is important is in matters of immigration and naturalization. While the alien illegitimate[1] child of a United States citizen mother is entitled to a preferred status, "[a]n illegitimate child can claim no benefits through its father unless the child is legitimated.” (Gordon and Rosenfield, Immigration Law and Procedure, § 2.18b, p 2-155.) A legitimated child is defined as "a child legitimated under the law of the child’s residence or domicile, or under the law of the father’s residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or ¡parents at the time of such legitimation.” (US Code, tit 8, § 1101, subd [b], par [1], cl [C]; see 8 CFR 204.1.) In short, more than the first step of filiation must have been ta ken before a child is legitimated and able to claim legal status as a United States citizen through his or her father.

. In recent years the Legislature has enlarged the class of persons statutorily entitled to initiate a paternity proceeding and has extended the time in which some such proceedings may be brought. In 1976 the Legislature amended section 517 of the Family Court Act so as to allow putative fathers to bring paternity proceedings within 18 years of the child’s birth. (L 1976, ch 665, § 6.) In 1979 the two-year period in which a child’s mother may initiate an action was extended for the very young mother until two years after the mother’s 18th birthday. (L 1979, ch 452, § 1.) The Legislature clearly intended to increase the ability of private individuals to seek to support or seek support of children born out of wedlock. In a case such as the one at bar, for instance, the putative father wouldj have an opportunity to come forward and seek to provide support for T. D. if for some reason the mother’s former husband failed to support the child.

. The clear and convincing standard of proof has evolved because it has long been recognized that a charge of paternity is easy to make and hard to disprove. (Drummond v Dolan, 155 App Div 449, 450-451.) The clear and convincing standard, which " 'forbids relief whenever the evidence is loose, equivocal or contradictory’ ” (Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 220), has been used to protect parties from specious support claims. (See Matter of Lopez v Sanchez, 34 NY2d 662; Matter of Piccola v Hibbard, 51 AD2d 674, affd 40 NY2d 1035; Matter of Margie "L” v Gary "M”, 46 AD2d 935; Matter of Linda "RR” v Brent "SS”, 40 AD2d 908; Matter of Arlene W. v Robert D., 36 AD2d 455.) Recent decisions have held that in a "reverse” paternity proceeding when the "father” of the child born out of wedlock brings a proceeding to gain an order of filiation and to submit to an order of support, the necessary standard of proof should be by a preponderance of the evidence. (Jaynes v Tulla, 70 AD2d 680; Matter of Smith v Lane, 101 Misc 2d 615.) This position is consistent with the thesis that a paternity proceeding is primarily a proceeding for support, not status.