817 P.2d 37

**R.A.J., Petitioner–Appellant,**

v.

**L.B.V., Respondent–Appellee.**

**No. 1 CA–CV 90–321.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 20, 1991.

Law Offices of William M. Spence, P.C. by William M. Spence, Chandler, for petitioner-appellant.

Law Offices of Sharon A. O'Brien–Reyes and Annlouise Ferguson, P.C. by Sharon A. O'Brien–Reyes, Mesa, for respondent-appellee.

## OPINION

EHRLICH, Presiding Judge.

R.A.J. appeals from a trial court order vacating its prior order determining Mr. J.s' paternity of a child born to L.B.V., the wife of W.V. The issue on appeal is whether the trial court erred in vacating the order based upon its conclusions that: (1) it lacked jurisdiction to enter the order of paternity because the action had been filed

prior to the child's birth and because the mother of the child was married to another person at the time the child was conceived and born; (2) the appearance of the mother's husband's name on the birth certificate as father of the child determined that Mr. J. was not the father; and (3) it would be in the best interests of the child to vacate the order of paternity. We hold that the trial court did have jurisdiction over the paternity action and that Mr. V.'s name as the father on the birth certificate was not dispositive of the issue of paternity. Accordingly, we reverse the decision of the trial court and remand this matter to it. On remand, Mr. V. should be a party to the action as should the child, and a guardian ad litem should be appointed by the trial court to protect the interests of the child. Then the best interests of the child can be reexamined.

## I. FACTS

Before the birth of the child to Mrs. V., Mr. J. filed a paternity action, claiming that he is the father. Shortly thereafter, Mrs. V. gave birth. At the time of the conception and birth, Mrs. V. was married to Mr. V. Blood tests were conducted to ascertain paternity. These tests indicated that Mr. V. could not be the father, but that Mr. J. was the father by a probability factor of 99.25%.

Mrs. V. and Mr. J. stipulated to an order of paternity declaring Mr. J. to be the father of the child. Mrs. V. was awarded custody, and Mr. J. was given visitation privileges and ordered to pay child support. Mrs. V. subsequently filed a motion to vacate the order of paternity, which the trial court granted pursuant to Rule 60(c), *A.R.Civ.P.* Mr. J. then appealed to this court.

## II. TRIAL COURT JURISDICTION OVER PATERNITY ACTION

■■ In vacating the paternity order, the trial court ruled that it had lacked jurisdiction to enter its original order because the action had been filed prior to the birth and because the mother was married to a man other than the putative father at the time of the conception and birth. Generally, we will not set aside a judgment under Rule 60(c) unless a clear abuse of the trial court's discretion is shown. *Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 633, 688 P.2d 637, 641 (1984); *Staffco, Inc. v. Maricopa Trading Company,* 122 Ariz. 353, 356, 595 P.2d 31, 34 (1979). However, we independently review the jurisdiction of the trial court as an issue of law. *See Tovrea Land and Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

■■ Mr. J.s' claim that he procedurally was correct in filing the paternity claim prior to the child's birth is supported by A.R.S. § 12–844. That statute provides that "[p]roceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child." The issue then is whether, as the putative father, he was entitled to file a paternity action at all.[1]

Mrs. V. contends that no one is authorized to bring a paternity action when the mother is married at the time of a child's conception and birth. Mr. J. argues that he, as the putative father, may initiate a paternity action regardless of the mother's marital status. Each begins by positing a different interpretation of A.R.S. § 12–846(B), which provides that a paternity action may be commenced

... by the filing of a verified complaint by the mother or father, with the mother or father as plaintiff, or by the guardian

---

**1.** Mrs. V. asserts that even if the statute allows a paternity action to be commenced before the child's birth, such a filing violates the mother's right to the privacy of her body. She maintains that under *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973), a woman's privacy right precludes the state from becoming involved in her pregnancy without the existence of a compelling state interest. Mrs. V. claims that the state lacks a compelling interest in the time when a paternity action may be commenced and, therefore, a paternity action may not be filed until after the child is born. Mrs. V. failed to raise this issue in the trial court and is therefore precluded from raising it on appeal. *Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped,* 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986).

or best friend of a child or children born out of wedlock.

Mrs. V. argues that the statute applies only to children born out of wedlock, a status not applicable to her child whose mother was married. Mr. J. responds that the phrase "born out of wedlock" only limits when a guardian or best friend may initiate paternity proceedings and does not limit when a mother or father may bring an action.

In *Ban v. Quigley*, 168 Ariz. 196, 812 P.2d 1014 (App.1990), the court considered this issue. In determining the legislative intent behind § 12–846, it examined A.R.S. § 12–843(A), which states:

A. Proceedings to establish the maternity or paternity of a child or children and to compel support under this article may be commenced by any of the following:

1. The mother.

2. The father.

3. The guardian, conservator or best friend of a child or children born out of wedlock.

The court concluded that the phrase "out of wedlock" in § 12–846(B) limits when a guardian or best friend may bring a paternity action; it does not affect when a mother or father may initiate such a proceeding. *Id.* at 199, 812 P.2d at 1017. We agree with this interpretation of § 12–846(B); the marital status of the mother is irrelevant when either the mother or the father brings the action.

Mrs. V. then argues that Mr. J. lacked standing to bring the action because he legally was not the "father" listed in A.R.S. § 12–843(A) as one of those who may commence the paternity proceedings provided for in A.R.S. § 12–846(B). She draws strength for her argument from A.R.S. § 36–322(E), which provides that the husband of a woman married at the time of the conception and birth is "presumed to be the father of the child."

In *Ban,* the court considered whether the word "father" in A.R.S. §§ 12–843(A) and 12–846(B) was "intended to mean the putative father, presumed or otherwise." At

199, 812 P.2d at 1017. In concluding that it was, the court observed:

Prior to the 1985 amendment to § 12–846, subsection B did not contain the term "father." Such "fathers" or, stated more accurately, individuals claiming to be fathers, were unable to bring an action under the statute to have themselves declared fathers. *Allen v. Sullivan,* 139 Ariz. 142, 677 P.2d 305 (App.1984). The amendment, therefore, must have been intended to provide standing to commence a paternity action to a putative father, who may or may not be the husband of the mother at the time the child is born.

*Id.* We agree with this reasoning. Mr. J. did have standing to initiate the action.

We therefore hold that the trial court did have jurisdiction over the paternity action filed by Mr. J. prior to the birth of the child.

### III. LEGAL CONSEQUENCE OF HUSBAND'S NAME ON BIRTH CERTIFICATE

Mr. J. argues that the trial court erred in relying upon the listing of Mr. V.'s name as the father on the birth certificate because that name was used only until the issue of paternity could be resolved. Mrs. V. contends that her consent is required to change the name of the father, and that Mr. J. cannot base his claim of parentage upon the possibility that the name on the birth certificate may change.

While A.R.S. § 36–322(E) provides that the mother's husband at the time of the child's conception and birth is the presumptive father whose name will appear on the birth certificate, this presumption is not irrebutable. The same statute also states that a new birth certificate may be issued when a court has determined paternity, at which time "the name of the man so adjudged shall be entered on the record as the father." This is in accord with another statute, A.R.S. § 36–326(A)(3), which provides for the issuance of a new birth certificate following a court determination of paternity.

Because the paternity of the child could not be determined until after the child's birth, under § 36–322(E), Mr. V.'s name necessarily appeared as that of the father on the birth certificate. However, as both that statute and § 36–326(A)(3) demonstrate, this listing does not foreclose a future determination of paternity. The trial court erred in relying upon the presence of Mr. V.'s name on the birth certificate as a basis for vacating the order.

## IV. BEST INTERESTS OF THE CHILD

■ The trial court concluded that it would be in the best interests of the child to vacate the paternity order as that would help to preserve the family unit and the child's relationship with Mrs. V.'s husband and other children. There are two errors in this approach: First, the determination of the best interests of the child must be made separately, after the resolution of biological paternity. Second, the child was not named as a party to the paternity action and did not have a guardian ad litem to advocate the child's interests. Although neither party raised the issue, we may raise on our own the question of the proper representation of a child in a paternity proceeding. *Fort v. Chester*, 731 S.W.2d 520, 522 (Mo.App.1987).

As to the issue of biological paternity, the record reflects that according to blood tests already conducted, Mr. V. is not biologically related to the child. The tests showed Mr. J. to be the father by a probability factor of 99.25%.

■ The second issue is not as neatly resolved. Rule 19(a), *A.R.Civ.P.*, requires that a person be joined as a party to an action if the person "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest ..."

In *J.M.L. v. C.L.*, 536 S.W.2d 944, 946 (Mo.App.1976), a child was at issue in a paternity action brought by the putative father. The court declared the child to be a necessary party for purposes of the litigation.

In *Klahr v. Court of Appeals of State, Div. One*, 134 Ariz. 67, 68–69, 654 P.2d 1, 2–3 (1982), the court held that a child who was the subject of a custody order was the real party in interest in a special action brought by the child's father challenging the order.

While in *Commissioner of Public Welfare v. Koehler*, 284 N.Y. 260, 30 N.E.2d 587, 590–91 (App.1940), the court held that the child was not a necessary party to the paternity action, the purpose of the proceeding was only to enforce a statutory duty imposed upon the father and the outcome was not a binding adjudication of illegitimacy. *See also Czajak v. Vanonese*, 104 Misc.2d 601, 428 N.Y.S.2d 986, 988 (Fam.Ct. Onodaga Co.1980).

Here, the child clearly is the subject of the paternity action. The decision will be a binding adjudication of the child's legal status, unlike the *Koehler* and *Czajak* cases. Furthermore, the child has numerous interests in the outcome of the litigation, such as financial support, inheritance rights and the establishment and maintainence of familial bonds. *State v. Santos*, 104 Wash.2d 142, 702 P.2d 1179, 1182–83 (1985). These interests may be inconsistent with those of Mr. J. and Mrs. V., thereby placing the child at risk of having the child's interests impaired if the child is not a party to the litigation. Under Rule 19(a), the child should be joined as a party to the action.

■ The next issue is whether a guardian ad litem should be appointed to represent the child. Rule 17(g), *A.R.Civ.P.*, states that the court shall appoint a guardian ad litem for a minor who is not otherwise represented in an action. In addition to this authority, courts have the inherent, equitable power to make such appointments. *In Re Custody of D.A.*, 201 Ill. App.3d 810, 146 Ill.Dec. 1021, 1027–28, 558 N.E.2d 1355, 1361–62 (1990); *see also Stewart v. Superior Court*, 163 Ariz. 227, 228, 787 P.2d 126, 127 (App.1989).

The purpose of appointing a guardian ad litem is to insure that the child's interests will be adequately represented and protected. *W.E.W. v. D.A.M.*, 619 P.2d 1023, 1025

(Alaska 1980); *Majidi v. Palmer*, 175 Ill. App.3d 679, 125 Ill.Dec. 148, 152, 530 N.E.2d 66, 70 (1988). In particular, the court should consider whether the child's interests are potentially in conflict with those of the parents. *In Re Custody of D.A.*, 146 Ill.Dec. at 1027, 558 N.E.2d at 1361. Although Mr. J. and Mrs. V. each may claim to be protecting the child's interests, other courts rightly have found that a conflict of interest between the parties is inherent in these situations, which often leaves the child unprotected.

The court in *R.R.K. v. S.G.P.*, 400 Mass. 12, 507 N.E.2d 736, 738 (1987), found it necessary to appoint a guardian ad litem for a child when the paternity action was brought by the putative father against the mother, who was married to a different man at the time the child was conceived. The court drew its conclusion that a guardian ad litem was needed from the adverse nature of the relationship between the parties. *Id.*

In *Fort*, the court concluded that the mother's vacillation in her sworn statements as to the identity of the father indicated that the child's interests were not being protected by the mother. 731 S.W.2d at 523. It ordered a guardian ad litem appointed. *Id.*

The court in *J.M.L.* focused upon both the consequences of a paternity action and how well the parties were protecting the child's interests in determining whether a guardian ad litem was necessary. 536 S.W.2d at 947. It stated:

> At stake is his status as a legitimate child, as well as his right to be supported by and inherit from his presumptive father.... A guardian ad litem is necessary since the litigation purports to make a 'binding effect on the child's status,' i.e., his legitimacy.

*Id.* In addition, the court found that the mother's actions in first denying the alleged father's paternity in her answer to the petition, then stipulating to it, and finally denying it and requesting that the matter be litigated, indicated that she was not protecting the child's interests.

Because this action involves a man who claims to be the father of a married woman's child, certain conflicts of interests are likely to be present between the parties. The potential is magnified in this case by Mrs. V.'s actions, which mirrored those of the mothers in *Fort* and *J.M.L.*, as she first denied that Mr. J. was the father, then stipulated to the contrary, and then had the paternity order vacated. The child has many interests which hinge upon the outcome of the child's paternity, legal status, financial support, and bonds developed with Mrs. V.'s husband and other children. Based upon the foregoing, we hold that the child is a necessary party and that the trial court on remand should appoint a guardian ad litem to represent the child's interests in this matter.

## V. HUSBAND AS A NECESSARY PARTY

Mr. V. was not named as a party to the paternity action. Although neither Mrs. V. nor Mr. J. has raised the issue of whether he is a necessary party to the litigation, we may do so on our own. *Fort*, 731 S.W.2d at 522.

Courts in other jurisdictions have considered whether the mother's husband as the presumptive father is a necessary party in a paternity action between the mother and the putative father of the child. In *Betzaida D. v. Lazaro F.*, 99 Misc.2d 408, 416 N.Y.S.2d 190 (Fam.Ct.N.Y.Co.1979), a paternity proceeding was brought by the commissioner of social services, as the assignee of the mother, against the putative father. The mother argued that it was not necessary to name her husband as a party to the action because the litigation concerned only financial support and not the child's status or the rights of either the mother's husband or the putative father. The court rejected that argument, holding that the husband must be served in these types of actions because, regardless of the specific issue being litigated, paternity proceedings affect the integrity of the family relationship and the child's interest in protecting the child's legal status. *Id.* at 191.

The court in *Burnes v. Burnes*, 60 Misc.2d 675, 303 N.Y.S.2d 736 (Fam.Ct. Kings Co.1969), which also involved a married woman bringing suit against the putative father, focused upon the requirements of due process in holding that the mother's husband must be named as a party. It explained:

> The right to be heard within the due process clause of the Constitution has little reality unless one is informed of the matter and can choose for himself whether to appear or default, acquiesce or contest, and the notice must be of such nature as reasonably to convey this required information.

*Id.* 303 N.Y.S.2d at 738.

It was the putative father who initiated the paternity suit in *J.M.L.*, in which the court found that the mother's husband was a necessary party. 536 S.W.2d at 945. The court reasoned that the husband was the presumptive father of the child and therefore complete relief could not be accorded to all of the parties unless he were joined. Applying the Missouri civil procedure rule on joinder of parties, which is identical to our Rule 19, *A.R.Civ.P.*, it stated:

> It can hardly be disputed that a presumptive father has an "interest relating to the subject of the action" when the action concerns a young child who was born to his wife during their marriage, and who, according to the uncontradicted statements at oral argument, carries his name and has been supported by him.

*Id.* at 946. The court further supported its conclusion by finding that the Missouri and federal constitutions require that the husband be given notice of an action attempting to affect any of his rights as the presumptive and legal father. *Id.* at 946–47.

The courts in *Koehler* and *Czajak* reached a different conclusion regarding the necessity of the husband as a party. Those courts concluded that like the child at issue, the mother's husband is not a necessary party because any paternity order would not be binding upon him. *Koehler*, 30 N.E.2d at 590–91; *Czajak*, 428 N.Y.S.2d at 988.

We find that the legal and equitable considerations involved in a paternity action weigh heavily in favor of naming Mr. V. as a party to the proceedings. Under both the federal and Arizona constitutions, a person is entitled to due process of law. Amend. V and XIV, United States Constitution; Art. II, section 4, Arizona Constitution. Mr. V. was entitled to receive notice of Mr. J.'s paternity claim so that he could choose for himself his legal posture regarding this child and the integrity of his family.

A consideration of Rule 19(a) also leads to the conclusion that Mr. V. should be a party to the action. Like the husbands in *J.M.L.* and *Betzaida D.*, Mr. V., as the presumptive father, has an interest in a child born to his wife during their marriage, a child who carries his name and lives with him. Because Mr. V.'s objective for the outcome of the litigation might differ from that of either his wife or Mr. J.'s, his ability to protect his interests is impaired if he is not named as a party and given an opportunity to present his position.

Finally, equitable considerations support naming Mr. V. as a party, specifically the effect that the outcome of the action will have on the family relationship. As one of the presumptive heads of the family unit, he should be given an opportunity to give voice to his view regarding who is named as the child's father. The order requested here would be determinative of the child's parentage.

Based on the foregoing, we find that Mr. V. was a necessary party to the action.

## VII. CONCLUSION

We hold that the trial court did have jurisdiction over the paternity action and that Mr. V.'s name as the father on the birth certificate was not determinative of the issue of the child's paternity. This matter is remanded to the trial court so that Mr. V. and the child can be named as parties to the action, so that a guardian ad litem may be appointed to protect the interests of the child, and so that the best interests of the child may be reexamined in light of our findings.

Both parties have requested their costs and attorneys' fees on appeal. We hereby direct the trial court to determine that issue at the conclusion of this matter.

FIDEL, C.J., and TAYLOR, J., concur.