OPINION OF THE COURT
Lee L. Holzman, J.
Decedent’s alleged spouse, the coadministratrix of the estate, filed this proceeding to revoke the limited letters of administration that had issued to respondent, decedent’s mother, pursuant to a stipulation of the parties. Respondent opposed the application, contending that the marriage between petitioner and decedent was void from its inception and that decedent is not the father of Jennifer, petitioner’s youngest child. The matter was tried before the court without a jury. The most interesting question presented is whether a child born more than nine months after decedent entered into a ceremonial marriage with petitioner should be presumed to be decedent’s child even though it is contended that the marriage can be declared void or voidable after his death and decedent’s paternity is now questioned.
The parties previously entered into a stipulation on the record in open court pursuant to which they agreed that limited letters of administration would issue jointly to petitioner and respondent so that they might pursue a negligence action based upon the events leading to decedent’s death. In view of respondent’s allegation that the infant was not decedent’s child and that she could obtain medical proof to support that claim, the decree entered on May 1, 1989 embodying the terms of the aforesaid stipulation directed that the parties take the necessary steps to have the relevant blood and DNA tests performed to ascertain whether decedent was the father of the infant (Matter of Pizarro, NYLJ, Apr. 24, 1989, at 25, col 1). Pursuant to the above stipulation, the parties also reserved their rights in any subsequent proceedings with respect to all issues relating to status.
The forensic tests contemplated in the stipulation never took place, evidently as a result of the unavailability of any records with regard to the blood type of decedent. It also appears that the underlying causes of action for wrongful death and personal injuries are about to be settled.
The parties stipulated at the hearing that decedent and petitioner underwent a ceremonial marriage in Bronx County on July 19, 1984. The parties further stipulated that peti *743 tioner had immigrated to the United States on April 13, 1983 and had obtained a divorce from her prior husband in New York pursuant to decree entered on March 20, 1984. It was also stipulated that the complaint in the divorce action alleged that she had been a resident of the State of New York for at least two years prior to the institution of the proceeding. Obviously that statement was incorrect inasmuch as petitioner had not commenced to reside in this State until April 13, 1983.
Petitioner’s daughter, Jennifer, was born on November 16, 1985, that is, subsequent to petitioner’s ceremonial marriage to decedent on July 19, 1984. Both the hospital records with reference to the birth of Jennifer and her birth certificate reflect that the infant’s father was petitioner’s prior husband. Petitioner’s explanation for this discrepancy is that she did not identify any party as the father of the infant and that the hospital staff merely relied on the records of the birth of her son. Petitioner testified that decedent is Jennifer’s father. Although the files transferred from New York County contain transcripts of testimony about the relationship between decedent and petitioner from the time of their marriage until decedent’s death, these transcripts are not in evidence in this proceeding and the same witnesses were not called to testify at the hearing. Consequently, the proof on the issue of paternity is essentially limited to the following: Jennifer was born approximately 16 months after the ceremonial marriage between decedent and petitioner; petitioner now asserts that decedent was Jennifer’s father; and the hospital and birth records reflect that petitioner’s prior husband, rather than decedent, is the father.
It is well settled that, if the marriage between petitioner and decedent were valid, the presumption that the child born during this marriage was fathered by decedent is "one of the strongest and most persuasive known to the law” which "will not fail unless common sense and reason are outraged by a holding that it abides” (Matter of Findlay, 253 NY 1; see also, Nass v Nass, 64 AD2d 852; Matter of Schenectady County Dept, of Social Servs. v Hilvan RR, 57 AD2d 688; Richardson, Evidence §59 [Prince 10th ed]). Nevertheless, even such a strong presumption can be overcome by the introduction of clear and convincing evidence of nonaccess on the part of the mother’s husband (Nass v Nass, supra; Matter of Schenectady County Dept. of Social Servs. v Hilvan RR, supra; Matter of Orange v Rose, 31 AD2d 715; Matter of Martine S. v Anthony *744 D., 120 Misc 2d 567; Richardson, Evidence §59 [Prince 10th ed]; see also, Matter of Findlay, supra).
In addition to the common-law presumption of legitimacy of a child born during a marriage, section 24 of the Domestic Relations Law provides that a child born of parents who prior or subsequent to the birth have entered into a marriage in a manner authorized by the law of the place where they were married is the legitimate child of both parents notwithstanding that the marriage is void or voidable. In Crane v Crane (81 AD2d 1033, 1034), a divorce proceeding in which paternity was placed in issue with regard to a child who had been born 18 months prior to the marriage, the Court held that the trial court had erred in relying upon section 24 of the Domestic Relations Law to place the burden of proof on the mother to show that her husband was not the father and stated in dicta that the "statute creates such a presumption [legitimacy] for a child [only] where the parenthood of both mother and father, married prior or subsequent to the child’s birth, is conceded or proved.”
It is logical that section 24 of the Domestic Relations Law should not create a presumption of parenthood where the child was born prior to the ceremonial marriage and this clearly would have to be the case where the child was born prior to the parties knowing each other. A literal reading of the statute also indicates that its purpose is to legitimatize children rather than to establish paternity in contested proceedings. Moreover, no authority has been presented to the court which discusses whether any presumption of paternity flows from a birth which occurred after a ceremonial marriage but before that marriage was declared invalid. Nevertheless, it appears to this court that the common-law presumption as to the legitimacy of a child born during a marriage and the public policy underlying the provisions of section 24 of the Domestic Relations Law lead to the conclusion that establishing, as was done here, that the child was born more than nine months after the ceremonial marriage, that the mother now claims that the male party to the marriage is the father, and that there is no proof that the parties to that marriage did not cohabit during the gestation period make out a prima facie case as to the paternity of the male part to the marriage. Furthermore, this is so even though the ceremonial marriage might ultimately be concluded to be invalid.
Here, the only evidence that respondent has presented is that the hospital records and birth certificate reflect that *745 decedent’s prior husband rather than decedent was Jennifer’s father. Although the court does not necessarily believe petitioner’s testimony that the hospital merely presumed that she was married to the same person that she had been married to when her son was born, these records, standing alone, do not constitute convincing evidence that decedent was not Jennifer’s father. It appears that petitioner had nothing to do with her former husband after the divorce and that he clearly was not Jennifer’s father. There is no need to speculate as to why petitioner might have fibbed to the hospital but the explanation might be as simple as that she was angry with decedent when Jennifer was born. In any event, under all of the circumstances of this case, to establish that decedent was not Jennifer’s father, at the very least, respondent should have proved one or more of the following: nonaccess by decedent, access by one other than decedent, or forensic evidence casting a doubt as to paternity.
Accordingly, based upon petitioner’s testimony, the ceremonial marriage between petitioner and decedent, and the date of Jennifer’s birth, the court concludes that decedent was Jennifer’s father and that this would be the finding of the court regardless of whether petitioner’s marriage to decedent can be declared invalid at this time. Inasmuch as it has been determined that decedent is Jennifer’s father, decedent’s mother is not one of his distributees under EPTL 4-1.1. Since she is not a distributee, she is not entitled to letters of administration pursuant to SCPA 1001 and the application to revoke her letters of administration is granted.