C. B. F., Respondent,

v.

H. F., Appellant.

No. 41137.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 11, 1979.

Frank Susman, Susman, Schermer, Willer & Rimmel, St. Louis, for appellant.

William E. Roussin, Gartenberg & Roussin, Clayton, for respondent.

REINHARD, Judge.

Appellant-husband appeals from a decree which dissolved his marriage to respondent-wife and determined certain issues regarding child custody, visitation, temporary custody, child support, maintenance, division of marital property, and fees and costs. He raises three issues: two relating to the determination of the paternity of three minor children and one relating to the award of gross maintenance for the respondent-wife.

The parties were married on July 18, 1967. On April 14, 1976, the respondent filed a "Petition in Separate Maintenance" wherein she stated that three children were born to the parties prior to the date of the marriage but that the marriage legitimated them and that they were entitled to support from their father, the appellant. In his answer, appellant denied respondent's allegations regarding the paternity and subsequent legitimation of the three children and

in his cross bill for dissolution of marriage he stated: "No children were born of the marriage and petitioner is not now pregnant." During trial, the respondent testified that she was previously married in 1961 and that her first husband was the father of her first child. The respondent stated that although she and her first husband did not divorce until 1967, they "never stayed together," but rather "lived separately" after their marriage.

During the time she was married to her first husband, the respondent had three more children. She testified that she and appellant began having sexual relations in 1961. More specifically, she testified that nine months prior to the birth of each of these three children she had sexual relations with appellant. From the time she first met appellant in 1961 until 1967 when her last child was born, respondent claims her sexual relationship with appellant was exclusive.

The hospital records pertaining to the births of the three children all identified respondent's first husband as the father of the children, although, on the birth certificates of the three children only one certificate identified respondent's first husband as the father. The other two birth certificates were left blank. Respondent testified that she did not inform the hospital for its records that her current husband was the father of the two children whose birth certificates failed to name a father. Respondent further testified that her reason for placing her current husband's name on the one birth certificate was to keep the child from being classified illegitimate.

Respondent testified that appellant provided food and clothing for the children both before and after the marriage. When asked by respondent to adopt the children, respondent says appellant replied by questioning the necessity of adopting his own children. The respondent called two witnesses: the former sister-in-law of appellant and a friend, who both testified that the appellant had referred to the children as his own.

Appellant claims he did not begin having sexual relations with respondent until 1963 or 1964. He stated he frequently saw respondent with other men including her first husband, during the period between 1962 and 1965. Appellant, as well as one of respondent's witnesses, testified that the parties had discussed the possibility of appellant's adopting the children. Appellant stated that throughout the marriage he referred to the children as his "step-children" while completing employment, insurance, and hospital forms. The children used the surname of respondent's first husband. Appellant further testified that the children referred to him as "Buddy" instead of "Dad" or similar words.

Respondent testified that she earned a gross salary of approximately eleven thousand four hundred dollars a year. She stated that her net take-home pay was one hundred sixty-eight dollars per week and that if she were to exclude the expenses for the children, her personal expenses per week would not exceed a hundred sixty-eight dollars.

The trial court entered a decree of dissolution on September 20, 1978, in which it found appellant to be the natural father of the three minor children, awarded respondent the custody of the children and child support in the amount of thirty-seven dollars per week for each unemancipated child, and awarded the respondent a gross maintenance award of three thousand dollars.

We first consider plaintiff's point wherein he claims:

> The trial court's orders relating to child custody, visitation, temporary custody and child support . . . were erroneous and improper, inasmuch as the trial court lacked jurisdiction under Missouri Revised Statutes, Chapter 452, to determine paternity in this action; because the uncontroverted evidence in this cause was that the three minor children were born to respondent during her marriage to a former husband and not during the course of her marriage to appellant and they were not, therefore, "children of the marriage" of the parties, as required by

Missouri Revised Statutes, §§ 452.310(4), 452.340 and 452.315.

Appellant appears to contend that a trial court in a dissolution proceeding under Chapter 452 only has jurisdiction to determine the issue of paternity of "children of the marriage" and that such phrase excludes children born prior to the marriage of the parties.

Appellant bases his argument on the language of § 452.340 which states: "In a proceeding for . . . dissolution of marriage . . . the court may order either or both parents owing a duty of support to a *child of the marriage* to pay an amount reasonable or necessary for his support . . . [emphasis added]." The repealed law which previously gave the court jurisdiction to make orders concerning child support read: "When a divorce shall be adjudged, the court shall make such order touching . . . the care, custody and maintenance of the *children* . . . [emphasis supplied]."

■ We find the change in language from "children" to "children of the marriage" does not affect the trial court's jurisdiction to determine the issue of legitimacy. Before January 1, 1974,[1] a divorce court clearly had jurisdiction to decide the issue of legitimacy of children born prior to the marriage as is demonstrated in *T. v. T.*, 447 S.W.2d 795 (Mo.App.1969). In *T. v. T.*, the wife needed to prove legitimation so as to justify a child support order. We do not believe the change from "children" to "children of the marriage" affects the right of a party in a divorce proceeding to demonstrate that a child is legitimate. If the proof of legitimacy is established pursuant to § 474.070 we believe the child becomes a "child of the marriage" regardless of when he/she was born. It is clear that a child born during one marriage can be legitimated by the husband of a second marriage by virtue of § 474.070, regardless of the presumption that a child born during a marriage is the legitimate child of that marriage. *L___ v. R___*, 518 S.W.2d 113, 124–25 (Mo.App.1974).

■ As to appellant's second point on paternity, the court found that the appellant is the "natural father" of the three children. We do not consider the sufficiency of evidence because respondent's first husband was not a party to this proceeding and we believe he should have been.[2] All three children were conceived and born during a period in which respondent was married to her first husband. The greatest presumption known to law is that a child conceived during the marriage is a child of that marriage. *Claude T. v. Claire T.*, 579 S.W.2d 141, 142 (Mo.App.1979). We held in *J.M.L. v. C.L.*, 536 S.W.2d 944 (Mo.App. 1976), a paternity suit by a man contending to be the father of a child born during the mother's marriage to another man, that both the child and his presumptive father should have been joined as parties. Relying on Rule 52.04(a)(2) we said:

> It can hardly be disputed that a presumptive father has an "interest relating to the subject of the action" when the action concerns a young child who was born to his wife during their marriage, and who, according to the uncontradicted statements at oral argument, carries his name and has been supported by him.
>
> The "interest" he .has in this child would also require that he be given notice of the paternity action or any action attempting to affect any of his rights as presumptive and legal father . . . . This notice is required by the due process clause of the state and federal constitutions. [citations omitted].

*Id.* at 946–47. Here, the children were born during the time the respondent was married to her first husband. There was no evidence of support by the first husband, but evidence that the children carried his name. Although the court appointed a guardian ad litem for the child, here, the first husband was neither made a party nor given notice of the proceedings. We believe respondent's first husband was a necessary party.

---

1. The new dissolution act became effective on that date.

2. This precise issue was not raised by the appellant.

Because of respondent's failure to make her first husband a party or her failure to demonstrate that he had notice of these proceedings, we must reverse that portion of the decree which declares paternity in appellant and all the other orders which relate to the children. We remand the case to the trial court for the purpose of permitting respondent to amend her pleadings so as to make her first husband a party.

As his last point, appellant challenges the trial court's award of three thousand dollars gross maintenance to the respondent as being erroneous and improper. The respondent testified that her net take-home pay was one hundred sixty-eight dollars per week and that if she were to exclude the expenses for the children, her personal expenses per week would not exceed that amount. In this case, the issue of maintenance is so interwoven with the matters relating to the children that the court could not properly determine this issue without a final determination as to the children and their support as it relates to maintenance. Therefore, we also reverse and remand this issue.

Cause reversed and remanded with instructions to proceed in accordance with this opinion.

DOWD, P. J., and CRIST, J., concur.