

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STEPHEN C. KRONK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD86233 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 28, 2024 |
| ALEEK J.C. AWAN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Calan T. McConkey, Judge**

**Before Division Three:** Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer and Edward R. Ardini, Jr., Judges

Ms. Aleek Awan ("Mother") appeals from the judgment entered by the Circuit Court of Clay County, Missouri ("trial court"), dissolving her marriage with Mr. Stephen Kronk ("Father"), establishing paternity of a child that was born approximately one year before the parties were married ("Child"), awarding sole legal and physical custody of Child to Father, establishing a parenting plan, awarding Father prospective child support, and dividing marital property. We affirm.

## Factual and Procedural History[1]

Mother and Father had a child together and married in October 2019, approximately one year after Mother gave birth to Child. Father filed a petition for dissolution of marriage on October 26, 2021, and alleged Child was a "child born of the marriage." Father simultaneously filed a motion for guardian ad litem ("GAL"), which was granted on January 20, 2022, and Mother was served with the dissolution petition on December 22, 2021. On January 20, 2022, Father filed a motion for a temporary parenting plan—alleging Mother had denied Father's access to Child for months and requesting sole legal custody—and sent Mother service by certified mail the same day. On January 21, 2022, Mother filed an "Answer" to the dissolution petition that did not refute or otherwise challenge any of Father's allegations in the dissolution petition and contained only a "continuance request" to have additional time to retain counsel. Both Father and the GAL opposed the "continuance request," in part because Mother continued to deny Father access to Child and because of concerns for Child's well-being. On February 4, 2022, the GAL also filed a motion for Mother to undergo a mental examination.

On February 16, 2022, Mother's attorney entered an appearance in the dissolution proceedings and successfully moved to file an answer and counter-petition out of time. Mother's pleadings *admitted* Father's paternity and simply did not address his allegation

---

[1] "All evidence and reasonable inferences therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence and inferences to the contrary are disregarded." *Archdekin v. Archdekin*, 562 S.W.3d 298, 304 (Mo. banc 2018) (citing *Landewee v. Landewee*, 515 S.W.3d 691, 694 (Mo. banc 2017)).

that Mother had wrongfully denied Father access to Child. On March 22, all parties stipulated to an intermediate temporary parenting plan to allow Father to begin seeing Child again. Under the initial temporary plan's terms, Child would primarily reside with Mother, and Father would receive blocks of parenting time that gradually increased in duration until April 21, 2022, when the trial court would conduct a hearing to decide a long-term temporary parenting plan.

On April 8, 2022, Mother's attorney filed a motion to withdraw, which was granted on April 14 after a hearing. Another hearing—relating to the temporary parenting plan—took place on April 21. The trial court also took up the GAL's motion for Mother's mental examination that day. Mother appeared at the hearing *pro se*. After the hearing, the trial court entered a new temporary parenting plan, which provided Father with sole custody, and granted the motion for Mother to undergo a mental examination. The trial court identified the examiner, provided his contact information and address in its ruling, and ordered Mother to contact the examiner within seventy-two hours. Mother made no attempt to contact the examiner.

Instead, Mother made several social media posts disclosing confidential contents of the hearing and accusing the GAL of lying and withholding information from the trial court when recommending that Father should receive full custody of Child. After Mother's new attorney entered his appearance on May 27, the trial court addressed the posts at a hearing conducted on June 2, 2022. At the hearing, the trial court admonished Mother for her social media posts, but did not issue a formal order. The parties both

3

assured the trial court that confidential information should not and would not be posted on public social media accounts.

On July 1, 2022, Father served multiple discovery requests on Mother. On September 1, after several unsuccessful informal attempts to secure Mother's mental examination, Father filed a motion for sanctions against Mother—which focused primarily on Mother's continued refusal to comply with the mental examination order and additionally cited the outstanding discovery requests—and specifically requested Mother's pleadings be stricken. On September 9, Mother responded with multiple filings that collectively argued the temporary parenting plan and order for mental examination should be vacated because no evidence justified either order and because Mother was "forced to proceed without aid of counsel" at the hearing where the orders were issued.

On September 12, 2022, the trial court granted Father's motion for sanctions and struck Mother's pleadings. Mother subsequently filed a motion to vacate the sanctions and reinstate her pleadings. At a hearing on October 5, 2022, the trial court took up all three of Mother's motions to vacate—the temporary custody order, the mental examination order, and the sanctions order. The trial court denied all three motions, scheduled a pre-trial conference, and set trial for March 16, 2023.

At the pre-trial conference on February 3, 2023, Mother moved to quash all orders pertaining to Child.[2] Mother argued the trial court lacked subject matter jurisdiction to

---

[2] Mother requested that the GAL be removed, that the order for her mental examination be quashed because her mental health was not relevant to the distribution of property or to the determination of any spousal support and that any orders pertaining to

adjudicate any of these issues because Father had not sufficiently pleaded that Child was a "child of the marriage" and that an adjudication of Child's paternity was a prerequisite to any determination of custody. The same day, Mother filed a separate petition to establish paternity, custody of Child, a parenting plan, and child support. Despite filing this new and separate petition, Mother did not request to continue the March 16 trial date in the pending dissolution proceeding.

Along with his answer to Mother's separate paternity and child custody petition, Father filed a motion to consolidate Mother's new paternity and child custody petition into the pending dissolution case on February 17, 2023. The circuit court presiding over Mother's newly filed paternity and child custody petition granted Father's consolidation motion, and the consolidated case was reassigned on February 21, 2023.

On March 2, 2023, Father filed a motion to strike Mother's paternity and child custody pleading allegations by enforcing the sanctions order previously granted in the dissolution case—because Mother *still* refused to submit to the court-ordered mental examination and had disregarded the other court order enforcing discovery.[3]

Before trial began on March 16, 2023, the trial court took up Father's motion to strike Mother's pleadings, Mother's motions to quash, and Mother's newly filed motion for Father to undergo a mental examination. The trial court took judicial notice of the

---

Child be quashed—presumably the active temporary custody order that awarded sole custody to Father.

[3] Specifically, Mother failed to provide the requested statement of property and debt, report of income and expenses, and responses to interrogatories, even after the trial granted Father's motion to compel discovery on October 5, 2022.

September 12, 2022, sanctions order against Mother, struck her paternity and child custody pleadings, and announced that Mother would not be allowed to present any affirmative evidence during the trial. The trial court denied Mother's motion for Father's mental evaluation as untimely and denied Mother's motions to quash because the substance of these motions would become moot after the trial court's judgment entered after trial.

Following trial, the trial court entered its judgment adjudicating Mother in default due to discovery sanctions, dissolving the marriage, providing sole custody of Child to Father, adopting an amended version of Father's parenting plan, requiring Mother to reimburse Father a total of $5,500 in expenses caused by her refusal to comply with discovery, and ordering Mother to pay Father monthly child support of $624.

Mother timely appealed, raising seven points on appeal, which we address out of order and group together for ease of analysis.

## Mother's Non-Compliant Briefing

On appeal, all briefs must comply with the Rule 84.04[4] requirements for points relied on. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). "[A] point relied on that does not properly state the legal reasons for a specific claim of reversible error 'preserves nothing for appellate review.'" *City of Harrisonville v. Missouri Dep't of Nat. Res.*, 681 S.W.3d 177, 181 (Mo. banc 2023) (quoting *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005)). Mother's initial brief was stricken for non-compliance with Rule

---

[4] All rule references are to I MISSOURI COURT RULES-STATE 2023.

6

84.04, and she was given the opportunity to file an amended brief. Her amended brief does little, and often nothing, to address these deficiencies. Many of her points are multifarious and preserve nothing for review. *Stone v. Stone*, 450 S.W.3d 817, 820 (Mo. App. W.D. 2014). Moreover, many of her points are nothing but abstract statements of law with no application to the facts of this case and no legal support demonstrating that Mother is entitled to relief. And, Mother frequently argues legal theories beyond the scope of her points relied on or alleges entirely new trial court errors in the body of her arguments, violating Rule 84.04(e). Rule 84.04(e) ("The argument shall substantially follow the order of 'Points Relied On.' . . . . The argument shall be limited to those errors included in the 'Points Relied On.'"). These errors alone justify dismissing Mother's appeal. *Lexow*, 643 S.W.3d at 509-10. However, because we are able to discern the gist of Mother's arguments in her points relied on, we will exercise our discretion to review, *ex gratia*, the substantive merits of Mother's appeal. *Stone*, 450 S.W.3d at 820.

### Points I and III

In Point I, Mother argues the trial court lacked subject matter jurisdiction over the proceedings with respect to Child because Father's petition did not properly plead all facts necessary to establish that Child was a "child of the marriage." In Point III, Mother further argues that—because it lacked subject matter jurisdiction over Child—the trial court erred in appointing the GAL to represent Child's interests.[5]

---

[5] In the argument section of this point, Mother also contends that the appointment of the GAL was not justified by the allegations in Father's motion for the appointment of

7

## Standard of Review

"This Court must affirm a decree for dissolution of marriage 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Archdekin v. Archdekin*, 562 S.W.3d 298, 304 (Mo. banc 2018) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Analysis

"Missouri courts recognize two kinds of jurisdiction:  subject matter jurisdiction and personal jurisdiction.  These two kinds of jurisdiction—and there are only two for the circuit courts—are based upon constitutional principles." *J.C.W ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009).  "Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that [t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal." *Id.* at 253-54 (quoting Mo. Const. art. V, § 14) (internal quotation marks omitted).  Because this dissolution case is a civil case, the circuit court had subject matter jurisdiction to hear it and render a binding judgment. *See id.* at 254 ("Applying this principle to the present case makes simple the task of determining jurisdiction:  The present case is a civil case.  Therefore, the circuit court has subject matter jurisdiction and, thus, has the authority to hear this dispute.").

---

the GAL.  Because she did not raise this purported separate argument in her point relied on, it is not preserved for our review, and we will not address it.

We assume that Mother's actual argument is not that the trial court lacked subject matter jurisdiction, which would render the entirety of the trial's proceedings a nullity, but rather that the trial court lacked statutory *authority* to adjudicate issues relating to Child. *See id.* at 255 ("When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant.").

In a dissolution case, "[t]he father and mother living apart are entitled to an adjudication by the circuit court as to their powers, rights and duties in respect to the custody and control . . . of their unmarried minor children." § 452.150.[6] This adjudication must be made regardless of whether the children are born in or out of wedlock. § 452.160. When contested, the determination of a child's paternity is an issue of fact. *See Boudinier v. Boudinier*, 203 S.W.2d 89, 97-98 (Mo. App. 1947). Here, however, the issue of paternity is ***not*** contested: Father alleged in his petition that Child was a "child to the marriage." In her answer, Mother admitted Child was a "child born of the marriage."[7] Because of this admission, the factual issue of whether Child is a child of Mother and Father was decided without need for further proceedings or evidence, so the trial court had the authority to adjudicate custody:

> [A] judicial admission forecloses further inquiry as to the matter in question. Allegations in a petition, admitted in an answer, are judicial admissions on that issue. A judicial admission waives or dispenses with the

---

[6] All statutory references are to the Revised Statutes of Missouri 2016, as supplemented.

[7] Mother ***never*** contested Father's paternity and even ***alleged Father's paternity*** in her separate paternity and child custody petition.

production of evidence and "concedes for the purposes of the litigation that a certain proposition is true."

*Yun v. Yun*, 908 S.W.2d 787, 789 (Mo. App. W.D. 1995) (citations omitted). And even if Mother had contested Father's paternity, the trial court obtained exclusive authority to determine the issue when Father pleaded that Child was a "child born to the marriage":

> [U]nder Chapter 452, the court had [authority] in a dissolution case to determine paternity and legitimacy of a child allegedly born to the parties before the marriage.
>
> . . . .
>
> Here, the husband's pleadings alleged that the child was born prior to marriage, that he had acknowledged that it was his child, and that he had custody. The dissolution court had exclusive [authority] to determine these issues and the final custody of the child.

*State ex rel. Lackey v. Hoester*, 599 S.W.2d 272, 273 (Mo. App. E.D. 1980) (citing *C.B.F. v. H.F.*, 592 S.W.2d 279, 281 (Mo. App. E.D. 1979)). The trial court had both jurisdiction and authority to determine custody and support obligations with respect to Child.

"In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem." § 452.423.1. Thus, because Mother and Father contested the issues of child support and custody in the dissolution proceeding, the trial court also had the authority to appoint a GAL.

Points I and III are denied.

10

**Points V and VI**

In Points V and VI, Mother argues the trial court erred in striking her pleadings in the subject dissolution proceeding.

**Standard of Review—Sanctions**

"Imposition of sanctions for failure to make discovery is a matter within the sound discretion of the trial court, and exercise of that discretion will not be disturbed upon review unless it is unjust." *Whitworth v. Whitworth*, 878 S.W.2d 479, 481 (Mo. App. W.D. 1994).

**Analysis**

"If a party fails to obey an order directing a . . . mental . . . examination under Rule 60.01, the court may upon motion and reasonable notice to the other parties . . . take any action authorized under Rules 61.01(d)(1), (2), and (4)." Rule 61.01(e). Under Rule 61.01(d)(2), a court may "[e]nter an order striking pleadings . . . until the order is obeyed . . . or render a judgment by default against the disobedient party." Rule 61.01(d)(2).

In Point VI, Mother argues her pleadings should not have been stricken because that sanction was excessive given that lesser punishments were available and would have allowed for the presentation of evidence beneficial to the adjudication. To support her argument, Mother cites to *Cosby v. Cosby*, 202 S.W.3d 717 (Mo. App. E.D. 2006), and *J.B.C. v. S.H.C.*, 719 S.W.2d 866 (Mo. App. E.D. 1986). In both cases, the trial court's decision to strike pleadings for discovery violations was found to be an abuse of

11

discretion because the stricken party made *significant efforts* to comply with discovery orders and did not willfully defy the court's authority.[8]

In contrast here, Mother refused to make *any attempt* to comply with the trial court's order—even after her motions to set aside the mental examination order and the sanctions order were denied. Where a party demonstrates deliberate and complete disregard for a trial court's discovery orders—as Mother has here—the trial court is well within its discretion to strike the party's pleadings:

> By his inaction and his failure to make himself available, Husband has demonstrated a deliberate disregard for the authority of the court. The trial court was within its discretion in striking Husband's Answer . . . . The court's imposition of sanctions against Husband in striking his answer . . . was solely the result of Husband's evasive behavior and his failure to cooperate with a direct court order, and Husband's complaint on appeal is without merit.

*Whitworth*, 878 S.W.2d at 482-83 (affirming the trial court's decision to strike Husband's pleadings even though lesser sanctions were available).

In Point V, Mother contends the trial court was required to provide her notice of the possibility that her pleadings could be stricken as a sanction before doing so and that the trial court relied on incorrect legal authority in issuing the sanction by citing

---

[8] In *Cosby*, the stricken party was not in violation of any discovery order at the time his pleadings were stricken, was not at fault for failing to provide some of the requested discovery, and had complied with all but two interrogatories out of eighteen. *Cosby v. Cosby*, 202 S.W.3d 717, 721-722 (Mo. App. E.D. 2006). "This case was not a total failure to comply with discovery nor did it involve repeated contemptuous actions." *Id.* at 722.

In *J.B.C.*, the stricken party answered forty out of forty-two requested interrogatories: "The breach was partial, not total." *J.B.C. v. S.H.C.*, 719 S.W.2d 866, 867-68, 871 (Mo. App. E.D. 1986).

Rule 67.03, the rule governing involuntary dismissals, instead of Rule 61.01, the rule governing discovery sanctions.

A single motion requesting sanctions, properly served, meets the notice requirement of Rule 61.01. *See Bell v. Bell*, 987 S.W.2d 395, 400-01 (Mo. App. E.D. 1999) (holding that a party was first put on notice of the possibility that the court could strike his pleadings when the first motion requesting that sanction was filed and that, as a result, the trial court did not violate Rule 61.01's notice requirement by announcing its decision to strike the party's pleading on the day of trial). Here, Father filed a motion for sanctions due to Mother's failure to comply with the trial court's order to undergo a mental examination, which explicitly requested that Mother's pleadings be stricken. Mother received this motion, submitted suggestions in opposition, and continued to disregard the court's order; she was, thus, sufficiently notified of the possibility her pleadings could be stricken before the sanction order issued.

And although the trial court cited to Rule 67.03 in its order striking Mother's pleadings, it also cited to *Karolat v. Karolat*, 151 S.W.3d 852 (Mo. App. W.D. 2004), which exclusively addresses a court's authority to issue sanctions *under Rule 61.01*.

Additionally, given that the trial court was justified in striking Mother's pleadings as a discovery sanction under Rule 61.01 and that Father's motion for sanctions clearly outlined Mother's non-compliance with discovery as its basis for the sanctions, the citation to Rule 67.03 in the ruling did not prejudice Mother. "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. [A]ppellate review is for

13

prejudice, not mere error." *Rasmussen v. Il. Cas. Co.*, 628 S.W.3d 166, 172 (Mo. App. W.D. 2021) (alteration in original) (internal quotation marks omitted) (citations omitted).

Points V and VI are denied.

## Points IV & VII

In Points IV & VII, Mother argues the trial court abused its discretion in enforcing its sanctions order by striking her pleadings in the consolidated paternity and child custody case.

### Analysis

In Point IV, Mother argues the reassigned judge who issued the March 16 order had not heard evidence on the issue of Mother's non-compliance with discovery and, therefore, did not have a sufficient basis to strike her paternity pleadings.

The reassignment of a case to a different judge does not automatically vacate all previously issued orders or render them unenforceable. *See Hoock v. SLB Acquisition, LLC*, 620 S.W.3d 292, 303 (Mo. App. E.D. 2021) (enforcing a sanctions order that was previously entered by a predecessor judge without need for rehearing evidence of the underlying factual basis).

Therefore, the original sanctions order was fully enforceable by the successor judge even though it had been issued by the predecessor judge.[9] *Id.* (citing *Universal Credit Acceptance, Inc. v. Ware*, 556 S.W.3d 69, 75 (Mo. App. E.D. 2018)) ("SLB has

---

[9] The newly assigned trial judge had the authority to reconsider any order issued by the predecessor judge. *Hoock v. SLB Acquisition, LLC*, 620 S.W.3d 292, 302-03 (Mo. App. E.D. 2021). Further, Mother did not file any motion for reconsideration.

not shown that a change in judge in the case between the two orders had any impact on the trial court's authority to modify the interlocutory Sanction Order and issue the Default Order."). Additionally, the original sanctions order, as an interlocutory order, was modifiable at any time before the final judgment issued. *Id.* at 302 (citing *Sanford v. CenturyTel of Missouri, LLC*, 490 S.W.3d 717, 719-20 (Mo. banc 2016)).

The trial court had the authority to strike Mother's consolidated paternity pleadings as a modification of the original sanctions order without finding any new discovery violation.[10] *Id.* at 302 (holding a successor judge did not err in enforcing a prior sanctions order, which originally only struck a party's pleadings, by further ordering the sanctioned party to be in default).

In Point VII, Mother argues the trial court abused its discretion by taking judicial notice of her social media posts and the trial court's previous admonishment for her to cease posting confidential information in social media as an inference that Mother had failed to follow previous trial court orders. Mother claims that her rights under the First Amendment were thus violated.

_____

[10] Mother cannot complain that this modification occurred without notice and an opportunity to be heard—the modification was made upon Father's motion, following briefing submitted by both Mother and Father and an oral hearing on the motion. *See Hoock*, 620 S.W.3d at 302-03 ("To the extent that a trial court's modification of an interlocutory order should be issued only with due notice to the affected parties, such that the parties have the opportunity to be heard, here, SLB expressly moved to refile its pleadings in response to the Sanction Order and argued its position before the trial court. SLB also had the opportunity to respond when Hoock sought a default on liability.").

Mother's contention is simply not supported by the record. In deciding to strike

Mother's paternity pleadings, the trial court took judicial notice of the preexisting order

to strike her dissolution pleadings:

> [T]he Court will take judicial notice of the file, there was a prior order by
> [the dissolution court] striking the pleadings of [Mother] for numerous
> reasons, one of them was failure to obey the psych, Order for Psychological
> Evaluation, and I believe 61.01, Subsection E, allows that relief, that will
> be granted in the paternity matter.

Neither the motion for sanctions in the dissolution proceeding nor the order granting that

motion referenced Mother's social media posts or the trial court's informal

admonishment to cease such posts. Instead, they each referenced Mother's continued

refusal to submit to the court-ordered mental examination, which was sufficient

justification to strike her paternity pleadings.

Points IV and VII are denied.

## Point II

In Point II, Mother avers that the trial court abused its discretion in denying her

request for a continuance to perform additional discovery.

### Standard of Review—Continuance

"The circuit court has broad discretion in ruling on a motion for a continuance."

*In re K.N.D.*, 649 S.W.3d 54, 70 (Mo. App. W.D. 2022). "The circuit court abuses its

discretion 'when the ruling is clearly against the logic of the circumstances and is so

unreasonably arbitrary that the ruling shocks the sense of justice and indicates a lack of

careful, deliberate consideration.'" *Macke v. Patton*, 591 S.W.3d 865, 868 (Mo. banc

16

2019) (quoting *Howard v. City of Kansas City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011)).

## Analysis

To comply with the Missouri rule governing continuance requests, "[a]n application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application may be made orally." Rule 65.03. "In the absence of compliance with the requirements of the rule, there can be no abuse of discretion in denying a continuance." *K.N.D.*, 649 S.W.3d at 71 (internal quotation marks omitted) (quoting *In re C.L.L.*, 776 S.W.2d 476, 477 (Mo. App. E.D. 1989)).

Mother did not file any written continuance request after initiating her paternity petition or after it was consolidated into the dissolution proceeding. In her appellate brief's Statement of Facts, Mother identifies only one continuance request. That continuance request was made orally at the April 14, 2022 hearing in the dissolution case, where Mother appeared and requested a continuance for the sole purpose of retaining new counsel, not for additional discovery; Mother did not file her separate paternity petition until February 6, 2023, after that hearing. The only filing that could be construed as a continuance request in the paternity case is Mother's morning-of-trial motion for Father to undergo a mental examination, which was denied as untimely. To the extent this motion could be construed as a continuance request, it lacks the affidavit required by Rule 65.03, and nothing in the record suggests Father consented to an oral continuance

17

request.  Because Mother did not comply with Rule 65.03, the trial court did not abuse its discretion in denying Mother's "continuance" request.[11]

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and Edward R. Ardini, Jr., Judge, concur.

---

[11] And even if Mother had properly submitted a written continuance request on the day of trial, the trial court would not have abused its discretion in denying it.  The denial of a continuance request is an abuse of discretion "only in extreme cases in which it is clear that the movant is free from any dereliction."  *In re P.D.*, 144 S.W.3d 907, 912 (Mo. App. E.D. 2004).  Mother knew of the March 16th trial date for more than five months and had more than one month from the time she filed her paternity petition and nearly one month after the consolidation of the cases to request a continuance, yet without explanation, she delayed any such request until the day of trial.

18